IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HADDRICK BYRD,** | : | **Civil No. 1:19-CV-00059** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT BRITTAIN,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

Presently before the court is the report and recommendation ("R&R") of United States Magistrate Judge Karoline Mehalchick (Doc. 48), which recommends granting the Defendants' motion for summary judgment (Doc. 39). Also pending are the objections to the R&R filed by Plaintiff Haddrick Byrd ("Plaintiff"). (Doc. 49). For the reasons set forth below, the Court shall adopt the R&R in its entirety and overrule the Plaintiff's objections.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Upon *de novo* review of the record, the court adopts the R&R's statement of facts and procedural history concerning this *pro se* civil rights action. Briefly, Plaintiff brought the above-captioned case against various officials at the State Correctional Institution at Frackville ("SCI-Frackville"), where Plaintiff is currently imprisoned, pursuant to 42 U.S.C. § 1983. (Doc. 1, at 1). As for relief, Plaintiff seeks

1

injunctive relief and monetary damages. Defendants previously moved to dismiss the complaint under FED. R. CIV. P. 12(b)(6), which the Court granted in part and denied in part. (Docs. 15, 30, 31). Specifically, the Court dismissed Plaintiff's retaliation and Eighth Amendment claims but allowed his First Amendment freedom of expression claim to proceed against Correctional Officer Chandler ("CO Chandler"), Unit Manager Dowd, Lieutenant Comisac, Superintendent Brittain, and Chief Grievance Officer Dorina Varner (the "Grievance Officials"). (Docs. 30, 31).

The facts that form the basis of the Plaintiff's remaining claim stem from CO Chandler's whistling while on duty in Plaintiff's housing unit at SCI-Frackville. Plaintiff maintains that CO Chandler would "constantly" whistle during his shift, whereas Defendants assert that CO Chandler would whistle "sporadically." (Doc. 41, ¶ 1; Doc. 46, at 2). Plaintiff, who is a Muslim, "believe[s] that whistling is calling the devil" and stated that CO Chandler's whistling was offensive to his beliefs and disruptive to his prayer. (Doc. 41, ¶ 6; Doc. 46, ¶ 6).

Plaintiff submitted an inmate request to staff member form to Unit Manager Dowd on October 19, 2017 regarding CO Chandler's behavior. (Doc. 41, ¶ 2; Doc. 41-1). Although the written request indicated that CO Chandler's conduct violated the prohibition on whistling contained in the Inmate Handbook's Supplement, it did not specify that CO Chandler's whistling also violated the Plaintiff's religious beliefs. (Doc. 41, ¶ 3). Plaintiff subsequently filed a formal grievance on October

25, 2017, which Lieutenant Comisac denied on November 2, 2017. (Doc. 41-2, at 6-7).

Upon appealing the denial of his grievance to Superintendent Brittain, Plaintiff eventually received a response that correctional officers are permitted to whistle while on duty, as the rules in the inmate handbook "are intended for inmates, not staff." (Doc. 41-2, at 3). However, neither Superintendent Brittain nor Lieutenant Chomisac were aware of any Department of Corrections policies that affirmatively allowed correctional officers to whistle while on duty in housing units. (Doc. 46, ¶ 4). Superintendent Brittain's response also verified that some practicing Muslims "find whistling offensive," and indicated that she would advise Lieutenant Comisac to tell CO Chandler that his conduct offended Plaintiff. (Doc. 41, ¶ 8; Doc. 46, ¶ 8).

Lieutenant Comisac subsequently instructed CO Chandler "to stop whistling around Plaintiff, as it was against his religious beliefs." (Doc. 41, ¶ 9; Doc. 46, ¶ 9). Although CO Chandler complied with this directive, he admitted that he would "occasionally forget and catch [himself] whistling." (Doc. 41, ¶ 10). When this occurred, CO Chandler stated that "he would voluntarily cease when [he] realized [he] was whistling." (*Id.*) Plaintiff alleged that CO Chandler's whistling continued until January 2020, when CO Chandler was moved to a different housing unit at SCI-Frackville. (Doc. 41, ¶ 11; Doc. 46, ¶ 11).

On June 12, 2020, Defendants collectively moved for summary judgment on Plaintiff's remaining First Amendment claim pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 39). After being fully briefed (Docs. 40, 41, 45, 46), Judge Mehalchick issued an R&R recommending that the motion for summary judgment be granted. (Doc. 48). Specifically, the R&R determined that there was no dispute of material fact as to whether CO Chandler violated Plaintiff's right to Free Exercise under First Amendment and whether the Grievance Officials were personally involved in the alleged constitutional wrongs. Plaintiff filed objections to the R&R on March 4, 2021, (Doc. 49), which the Court now examines in turn.

## II.   LEGAL STANDARDS

### A. Review of a Magistrate Judge's Report and Recommendation

When objections are timely filed to a magistrate judge's report and recommendation, the district court must conduct a *de novo* review of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)). For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good

practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citation omitted). Regardless of whether or not timely objections are made, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Local Rule 72.31.

### B. <u>Summary Judgment</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forward with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250-57 (1986). Only if this threshold is met may the cause of action proceed. *See Pappas*, 331 F. Supp. 2d at 315.

## III.   DISCUSSION

### A.   First Amendment Free Exercise Claim

In his first objection to the R&R, Plaintiff argues that the magistrate judge misapplied the factors set forth in *Turner v Safley*, 482 U.S. 78 (1987). (Doc. 49, at 4-7). As the R&R explained, once it is established that an individual has a belief that is sincerely held and religious in nature, the Court must apply the *Turner* test[1] "to determine whether the curtailment at issue is 'reasonably related to penological interests.'" *Heleva v. Kramer*, 214 F. App'x 244, 246 (3d Cir. 2007). In applying the four-factor *Turner* test, the Court should look to (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests." *Smith v. Kyler*, 295 F. App'x 479, 481 (3d Cir. 2008). The most critical

---

[1] "Although the Turner test was articulated in the context of challenges to prison regulations, as opposed to challenges to individual conduct, the analysis in the later context is the same." *Heleva*, 214 F. App'x at 246 n.1.

prong of the test is whether the challenged conduct "is reasonably related to legitimate penological interests." *Solan v. Zickefoose*, 530 F. App'x 109, 110 (3d Cir. 2013) (quoting *Turner*, 482 U.S. at 89).  Additionally, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (citing *Overton v. Bazzetta,* 539 U.S. 126 (2003)).

Here, the R&R determined that the evidence of record supported the finding that permitting correctional officers to whistle was rationally related to the legitimate government interest in affording them minimal freedoms to cope with stress while performing their work duties. (Doc. 48, at 10-11). Although Plaintiff contends that allowing prison officials to whistle is arbitrary and irrational when inmates are prohibited from doing the same, he does not point to any affirmative policy that states correctional officers are prohibited from whistling or otherwise subject to the rules set forth in the Prison Inmate Handbook. Second, the R&R found that there were alternative means for Plaintiff to practice his religion. (*Id.* at 11-12). Indeed, even if CO Chandler constantly whistled throughout the duration of his 2:00 PM to 10:00 PM shift, Plaintiff still had the ability to pray when CO Chandler was not working. *See Morton*, 343 F.3d at 219 (finding the second *Turner* factor weighed in favor of prison officials when the prison provided "Muslim inmates with the opportunity to pray daily, attend special weekly services, and observe religious

holidays."). Third, the R&R concluded that prohibiting guards from whistling would be unduly burdensome to correctional officers. (Doc. 48. at 12-13). Specifically, it would require a great amount of prison resources to enforce such a regulation and to address any inmate complaints that arose therefrom. Fourth, the R&R reasoned that the record supported the assertion that "a more limited policy prohibiting whistling by corrections officers only during Muslim prayers" would be ineffective because "there is no official time for praying or call to prayer at the prison." (*Id.* at 13). Accordingly, as there are no viable alternatives presented, the Court agrees that there is no dispute of material fact as to whether Plaintiff's rights could be accommodated at *de minimis* cost to the valid penological interest of allowing correctional officers to whistle as a means of relieving stress.

In sum, after careful review, the Court finds that the magistrate judge properly applied the factors set forth *Turner* and determined that the actions of CO Chandler did not violate the Plaintiff's First Amendment rights. The Court will accordingly overrule the Plaintiff's objection in this regard and grant summary judgment in favor of Defendants.

### B. **Personal Involvement**

Next, Plaintiff objects to the R&R's finding that the Grievance Officials lacked personal involvement in the challenged wrongdoings. (Doc. 49, at 7-8). Plaintiff asserts that the Grievance Officials were personally involved because they

failed to take corrective action when they became aware of CO Chandler's whistling. (*Id.* at 7-9). Plaintiff further claims that the Grievance Officials responded to his ongoing complaints by merely reaffirming that whistling was not prohibited by prison guards. (*Id.* at 8-9). Upon review of the record, the Court is not persuaded by this objection.

The R&R explained that "a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481, F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). In civil rights actions "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, the record shows that the Grievance Officials intervened by addressing CO Chandler and instructing him not to whistle. (Doc. 41-3, at 5; Doc. 41-4, at 5-6). Insofar as Plaintiff continued to grieve CO Chandler's conduct, however, the Grievance Officials further indicated that "the issue was previously addressed" and that they had consulted with the Religious Services Administrator regarding Plaintiff's claims. (Doc. 45-2, at 10, 12, 15, 17, 36). Accordingly, as they did not acquiesce in the alleged constitutional violation committed by CO Chandler, summary judgment will be granted in favor of the Grievance Officials for lack of personal involvement.

### C. **Injunctive Relief and Damages**

In his final objections to the R&R, Plaintiff maintains that he is entitled to both injunctive relief and damages. (Doc. 49, at ). The R&R declined to reach this issue, however, as it correctly concluded that Defendants were entitled to judgment on the merits of Plaintiff's remaining First Amendment Claim. (Doc. 48, at 7). Therefore, as the underlying constitutional claim is without merit, the Court will overrule the Plaintiff's objections regarding the viability of injunctive relief and monetary damages.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court shall overrule the Plaintiff's objections and adopt the R&R in its entirety. The Court will thus grant the Defendants' motion for summary judgment and close this case. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: March 31, 2021